UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00593-RJC

| | |
|---|---|
| LASONDA ALEXANDER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMMISSIONER OF SOCIAL SECURITY, ) <br> ) <br> Defendant. ) <br> ) <br> ) | **ORDER** |

**THIS MATTER** is before the Court on the Parties' Cross Motions for Summary Judgment. (Doc. Nos. 9, 11). Having fully considered the written arguments, administrative record, and applicable authority, the Court finds Plaintiff Lasonda Alexander's Motion for Summary Judgment (Doc. No 9) is **GRANTED**, the Commissioner's Motion for Summary Judgment (Doc. No. 11) is **DENIED**, and this case is **REMANDED** for further proceedings consistent with this Order.

## I. BACKGROUND

Plaintiff Lasonda Alexander ("Alexander") seeks judicial review of the Commissioner of Social Security's ("Defendant" or "Commissioner") denial of her social security claims. Alexander filed applications for disability insurance benefits and for supplemental security income on November 17, 2016. (Tr.[1] 18). In both applications, the alleged disability onset date was April 1, 2016. (*Id.*).

---

[1] Citations to "Tr." throughout the order refer to the administrative record located at Doc. No. 8.

After a hearing, the ALJ concluded Alexander could perform jobs that exist in significant numbers in the national economy and denied her claims. (*Id.* at 29). After exhausting her administrative remedies, Alexander appealed to this Court. (*Id.* at 1380-84). On appeal, the Honorable Frank D. Whitney granted the parties' consent to remand the case pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings. (*Id.* at 1386-87). In light of the remand, the Social Security Administration's Appeals Council observed in its decision the ALJ:

> did not acknowledge that both consultants further limited the claimant to short instructions (Exhibit 4A, page 13 and 8A, page 10). Moreover, the ALJ did not include a limitation to short instructions in the residual functional capacity, and there is no narrative explanation for the absence of such a limitation (Exhibits 4A, 8A, and Finding 5). In addition, the ALJ did not acknowledge that Dr. Brill limited the claimant to 'simple basic work-activities that can [b]e learned in up to one month' (Exhibit 7A, page 12 and 8A, page 12). Yet, the residual functional capacity does not limit the claimant to tasks that can be learned in one month (Finding 5). The ALJ did not explain the basis for rejecting this limitation.

(*Id.* at 1390). Thus, the Appeals Council instructed the ALJ to do the following:

- Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the opinions of state agency psychological consultants, Richard Cyr-McMillon, Ph.D. and Robert Brill, Ph.D. in accordance with the provisions of 20 CFR 404.1527 and 416.927, and explain the weight given to such opinion evidence.

- If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The ALJ will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the ALJ will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(*Id.* at 1391).

On remand, the ALJ held a telephonic hearing on July 13, 2021. (*Id.* at 1301). In denying Alexander's social security claim, the ALJ conducted a five-step sequential evaluation. (*Id.* at 1304-1321). At step one, the ALJ found that Alexander had not engaged in substantial gainful activity since the alleged onset date. (*Id*. at 1304). At step two, the ALJ found that Alexander had the following combination of severe impairments: cerebrovascular accident, diabetes mellitus, depressive disorder, borderline intellectual functioning, hypertension, and obesity. (*Id.*). The ALJ also found Alexander had several non-severe impairments. (*Id.*). At step three, the ALJ found that none of the impairments, or combinations of impairments, met or equaled the severity of a listed impairment. (*Id*. at 1304-08). Before moving to step four, the ALJ found that Alexander had the following residual functional capacity ("RFC"):

> to perform "sedentary" work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally climb ramps and stairs; no climbing of ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, and crouch; no crawling; and frequently reach in all directions. She can perform unskilled work of a routine and repetitive nature with a reasoning level of one to two in two-hour segments that is learnable within thirty days at a non-production pace meaning non-automated or conveyor belt pacing. Public contact should be incidental to work performed with frequent contact with supervisors and co-workers but no work requiring teamwork or tandem work for task completion. She can tolerate infrequent changes to the work setting and no conflict resolution or crisis management.

(*Id*. at 1308-19). At step four, the ALJ found that Alexander had no past relevant work and found at step five that Alexander could perform jobs that exist in significant numbers in the national economy. (*Id*. at 1319-20).

After exhausting her administrative remedies, Alexander brought this action for review of the Commissioner's decision denying her applications for disability benefits. (Doc. No. 1).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456; *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is

"substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

Alexander argues remand is warranted for two reasons: (1) the ALJ failed to account for the State agency psychological consultants' limitation to short, simple instructions or explain why such a limitation was not required; and (2) the Social Security Administration's structure was unconstitutional. Alexander succeeds on only her first argument – while Alexander fails to connect any harm suffered to any unconstitutional structure in the Social Security Administration, she does demonstrate harmful error in the ALJ's failure fully explain the weight he afforded to certain medical opinions, and thus, the ALJ's decision is remanded.

#### A. State Agency Psychological Consultants' Limitation to Short, Simple Instructions

"The determination of eligibility for social security benefits involves a five-step inquiry." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). "The five step inquiry asks whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of [one of certain listed] impairments ...; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work." *Id.* at 653 n.1; 20 C.F.R. § 404.1520. Before the fourth step, the ALJ determines the claimant's RFC, which is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). "The ALJ must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting

*Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "In doing so, the ALJ must provide a narrative discussion describing how the evidence supports each conclusion" and after completing "this function-by-function analysis, the ALJ can make a finding as to the claimant's RFC." *Id.* (internal quotation marks and citations omitted).

Alexander takes issue with the ALJ's determination of her RFC and his application of that RFC to other specified types of work. In determining an applicant's RFC, "[a]n ALJ may not substitute his own lay opinion for a medical expert's when evaluating the significance of clinical findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 108 (4th Cir. 2020). Though an ALJ need not give every medical opinion controlling weight, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" when evaluating medical opinions and using those opinions to craft an applicant's RFC. *Lewis*, 858 F.3d at 868. Moreover, "ALJs must provide a narrative discussion of how specific evidence supports the 'varying degrees of weight' assigned to different opinions." *Arakas*, 983 F.3d at 110.

Finally, in addition to these general requirements, the ALJ here was bound by the Appeals Council's order to "evaluate the opinions of state agency psychological consultants, Richard Cyr-McMillon, Ph.D. and Robert Brill, Ph.D. in accordance with the provisions of 20 CFR 404.1527 and 416.927, and explain the weight given to such opinion evidence." (Tr. 1391). *See United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) ("[I]t is indisputable that a lower court generally is bound to carry the mandate of the upper court into execution"); *see also Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011) (discussing the role of the Appeals Council) (citing 20 C.F.R. § 404.967).

Here, the ALJ failed to provide a proper narrative discussion of the weight afforded to medical opinions, failed to build a bridge from the evidence to his conclusions, and failed to abide by the order of the Appeals Council as it related to the doctors' limitation to short instructions. In

determining Alexander's RFC, the ALJ notes that Drs. Cyr-McMillon and Brill limited Alexander's mental capacity to understanding short and simple instructions, (Tr. 1319), but he gave only "some weight" to those opinions because "neither consultant defined 'short' or 'simple.'" (*Id.*). The ALJ then found that Alexander could perform certain jobs at reasoning levels one and two, some of which require the worker to understand longer, more detailed instructions, and he ultimately also included (without explanation) jobs at reasoning level three. (Tr. 1320).

20 C.F.R. § 404.1527(c) provides six factors for ALJs evaluating medical opinions, which, for non-treating physicians like Drs. Cyr-McMillon and Brill, include supportability, consistency, and specialization. *Arakas*, 983 F.3d at 110. Here, the ALJ neither included a narrative supporting his decision to afford the opinions of Drs. Cyr-McMillon and Brill only "some weight" nor evaluated those opinions under the factors outlined in 20 C.F.R. § 404.1527(c). Instead, the ALJ discounted these opinions – and reached a contrary conclusion – only on the basis that Drs. Cyr-McMillion and Brill did not define the words short or simple. (Tr. 1319). Thus, the ALJ erred in not providing a proper narrative discussion of the specific evidence supporting the weight he afforded these opinions and in failing to evaluate the opinions under 20 C.F.R. § 404.1527(c) – "[r]ight or wrong, that decision warrants some explanation." *Thomas*, 916 F.3d at 312.

The Commissioner argues that the ALJ performed the necessary narrative discussion of the weights afforded different opinions by questioning the vocational expert ("VE") as to the restrictions of short, simple instructions and then "consciously omitting" that limitation from the RFC. (Doc No. 20-21). That exercise simply falls short; the Fourth Circuit requires a "narrative discussion of how specific evidence supports the 'varying degrees of weight' assigned to different opinions," and the ALJ here failed to offer that discussion as to the doctors' opinions on Alexander's limitation to short instructions. *See Arakas*, 983 F.3d at 110.

Finally, the Commissioner argues that the ALJ considered limiting Alexander's RFC to comprehension of only short instructions, but in both instances the Commissioner cites (Tr. 1306, 1312), the ALJ referred only to *simple* instructions, not to short ones. (Tr. 1306 ("According to reasoning level one, *simple* is defined as one-or two-step instructions.") (emphasis added); Tr. 1312 ("Dr. Abramowitz did not define 'simple' tasks in his opinion. However, based on the claimant's ability to recall the number of strokes that she had as well as to follow directions and answer questions, the record does not support that she can only perform work at reasoning level one, which is work with one- to two-step instructions."). Thus, the ALJ failed to account for the weight he afforded to Drs. Cyr-McMillion's and Brill's opinion on Alexander's "short" instruction limitation, as required by the Fourth Circuit and by specific order from the Appeals Council in this case, and his failure to do so warrants remand.

The ALJ's unexplained decision not to limit Alexander's RFC to only jobs requiring short instructions is not harmless. Recently, the Fourth Circuit held that an apparent conflict exists "between a limitation to 'short, simple instructions' and a need to carry out 'detailed but uninvolved . . . instructions' jobs (as found in jobs requiring Level 2 Reasoning)." *Thomas*, 916 F.3d at 313–14. Here, the ALJ concluded that without a limitation to short instructions, Alexander can perform jobs at reasoning levels one, two, and three. (Tr. 1320-21). Accordingly, if the ALJ reached a different decision after more careful consideration of the weight to afford Drs. Cyr-McMillion's and Brill's opinions, then the ALJ could find far less jobs suitable for Alexander, and the ALJ may ultimately find her disabled. Therefore, the ALJ's failure to apply the correct legal standards in evaluating the evidence before him warrants remand.

### B. Agency Structure

Alexander argues the Social Security Act unconstitutionally restricts the President's removal of the Commissioner, and due to the unconstitutional structure of the Social Security Administration, the authority vested in the ALJ by the Commissioner was unconstitutional. Thus, Alexander asks the Court to remand her case for a new hearing. The Commissioner agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause, (Doc. No. 12, at 6), but contends a new hearing is not necessary because Alexander was not harmed by the unconstitutional statutory removal restriction. *See Collins v. Yellen*, 141 S. Ct. 1761, 1787-89 (2021).

The Supreme Court held in *Seila Law v. Consumer Financial Protection Bureau* that Congress cannot limit the President's power to remove the Director of the Consumer Financial Protection Bureau to instances of "inefficiency, neglect, or malfeasance." *Seila Law v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2197 (2020). It reached a similar conclusion the next term in *Collins v. Yellen*, concluding the Federal Housing Finance Agency's ("FHFA") structure unconstitutionally violated the separation of powers because the statute restricted the President's removal authority of the single Director "for cause." *Collins*, 141 S. Ct. at 1787. Here, Alexander argues, like in *Seila Law* and *Collins*, the Social Security Act violates the separation of powers because the statute restricts the President's ability to remove the Commissioner. 42 U.S.C. § 902(a)(3) ("An individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office."). On July 8, 2021, the Justice Department's Office of Legal Counsel issued an opinion that the removal restriction for the Commissioner violates the separation of powers in light of *Seila* and *Collins* and concluded the President may remove the Commissioner at will, notwithstanding the statutory

removal limitation. *The Constitutionality of the Commissioner of Social Security's Tenure Protection*, 45 Op. O.L.C. ––––, slip op. (July 8, 2021).

In *Collins*, however, after the Supreme Court concluded the FHFA's structure was unconstitutional, it explained that because the Director who headed the FHFA was properly appointed there was "no reason to regard any of the actions taken by the FHFA . . . as void" and explained that plaintiffs are not entitled to retrospective relief without showing the unconstitutional provision "inflict[ed] compensable harm." *Collins*, 141 S. Ct. at 1787–89. In other words, "the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office" when he is properly appointed simply because of the unconstitutional restrictive removal provision; rather, for retroactive relief, plaintiffs must show they were harmed by the unconstitutional provision. *Id.* at 1788 n.23. Applying these principles to the social security context, "a plaintiff must demonstrate some nexus between the removal protection and the injury [he] alleges in order to present a cognizable challenge to the constitutionality of the Social Security Commissioner's for-cause removal protection." *Satterthwaite v. Kijakazi*, No. 3:20-cv-724-MOC, 2022 WL 468946, at *3 (W.D.N.C. Feb. 15, 2022).

Here, Alexander convincingly argues the Social Security Act's restrictive removal provision is unconstitutional, but the existence of the unconstitutional removal provision alone does not entitle her to a new hearing. Alexander fails to show how she was harmed by the restrictive removal provision; instead, she argues that the unconstitutional removal provision regarding the Director infected all the ALJs and their decisions. In other words, the constitutional defect runs from the Commissioner to each ALJ, she argues, because the Commissioner delegates authority to the ALJs, and that defect resulted in compensable harm. Alexander fails, however, to

cite any legal authority or otherwise show the Court how she was particularly harmed, aside from making conclusory statements that she was harmed and that "sufficient nexus exists." (Doc. No. 10, at 17-18, 22). Such statements are insufficient to demonstrate direct harm,[2] and therefore, Alexander is entitled to summary judgment based only on her arguments surrounding her RFC.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 9) is **GRANTED**;
2. Defendant's Motion for Summary Judgment (Doc. No. 11) is **DENIED**; and
3. This case is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

Signed: March 29, 2023

Robert J. Conrad, Jr.
United States District Judge

---

[2] The Commissioner also argues Alexander is not entitled to a new hearing on her constitutional claims for various other reasons including harmless error, the de facto officer doctrine, the rule of necessity, and prudential considerations, which the Court need not consider in light of finding Alexander failed to demonstrate any harm or a nexus between the removal restriction and her alleged injury.